```
                              UNITED STATES DISTRICT COURT
                              SOUTHERN DISTRICT OF FLORIDA

                              CASE NO. 08-22451-Civ-MOORE
                              MAGISTRATE JUDGE P.A. WHITE

CHRISTOPHER SCOTT HUGHES,   :

     Petitioner,            :

v.                          :        REPORT OF
                                     MAGISTRATE JUDGE
WALTER A. McNEIL,[1]        :

     Respondent.            :
_____
```

I. Introduction

Christopher Hughes, who has served two and one-half years in prison and is presently on supervised release in Texas,[2] has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court. He attacks his conviction and sentence entered in the Circuit Court for the Eleventh Judicial Circuit in Miami-Dade County, case number F02-019207B.

This cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the

---

[1] Walter A. McNeil has replaced James R. McDonough as Secretary of the Florida Department of Corrections and is now the proper respondent in this proceeding. McNeil should, therefore, "automatically" be substituted as a party under Federal Rule of Civil Procedure 25(d)(1). The Clerk is directed to docket and change the designation of the Respondent.

[2] Hughes was placed on supervised release on July 7, 2007, before he filed the instant habeas petition. Nevertheless, he is "in custody" for purposes of this petition because he is under the supervision of the Department of Corrections' Miami probation office. See Coronado v. United States Bd. of Parole, 540 F.2d 216, 217 n. 3 (5th Cir. 1976) (habeas jurisdiction properly attached and petitioner was "in custody" in the district where he was placed under the supervision of a U.S. Probation Officer).

1

United States District Courts.

This Court has before it the petition, the Respondent's response and appendix of exhibits, Hughes' supplement to the petition and "reply memorandum," and the trial record.

## II. Procedural History

Hughes,[3] the co-pilot on an America West airbus, was arrested while preparing for takeoff on a commercial flight.[4] Hughes was charged with violating Florida Statutes which prohibit driving while impaired or with an unlawful blood alcohol level and operating an aircraft while intoxicated. §§ 316.193(1), 860.13(1)(a), Fla. Stat.; [DE# 14, App. G at Ex. A]. The State added a charge of culpable negligence. § 784.05(1), Fla. Stat.; [DE# 14, App. G at Ex. B].

Hughes moved to dismiss the information for lack of subject-matter jurisdiction because, he argued, federal law and regulations preempted the state's prosecution of aviation-related charges. [DE# 14, App. G at Ex. C]. The court denied the motion. Hughes challenged that ruling in a Petition for Writ of Prohibition filed

---

[3] Co-defendant and Pilot on the flight, Thomas Cloyd, was arrested, charged, tried and convicted with Hughes. He is not a party to the instant proceedings.

[4] The evidence at trial revealed Hughes and Cloyd ordered seven sixteen-ounce and seven thirty-four-ounce draft beers and other drinks from approximately 8:30 PM through 4:30 AM the morning they were scheduled to pilot a 10:30 AM passenger flight. (T. 1083, 1217, 1225). Airport personnel alerted police after noticing the pilots smelled of alcohol as they passed through security. The aircraft was being pulled away from the terminal by a tug when police ordered the plane to return to the airport. Officers administered a Horizontal Gaze Nystagmus test at the airport, which Hughes failed. (T. 1500, 1504, 1616). Hughes was arrested and transported to a police station. Breathylizer tests administered more than two hours after Hughes was removed from the plane revealed alcohol levels of .08 percent. (T. 1973, 2177). An expert calculated Hughes' blood alcohol level would have been between .113 and .145 percent when he was onboard conducting pre-flight preparations at 10:10-10:30 AM. (T. 2178-80).

in the Third District Court of Appeal. [DE# 14, App. A]. The court denied relief. [DE# 14, App. F].

Hughes sought pre-trial habeas corpus relief in the District Court, asserting federal preemption deprived the state of subject-matter jurisdiction to prosecute him. [DE# 14, App. G]. The District Court agreed with Hughes' preemption arguments and granted the petition. Hughes v. Eleventh Jud. Cir. of Fla., 274 F.Supp.2d 1334 (S.D. Fla. 2003). The Eleventh Circuit Court of Appeals reversed, finding the preemption claims were not "facially conclusive" for purposes of Younger[5] abstention and, therefore, the court should not have reached the preemption issue. Hughes v. Attorney Gen. of Fla., 377 F.3d 1258, 1260, 1262 n.3 (11th Cir. 2004) (treating the petition as a section 2241 petition; noting this filing would not bar a post-trial petition under section 2254).

In regards to conflict preemption, the Eleventh Circuit did not engage in a formal preemption analysis because:

> Neither party seriously contends that conflict preemption is at issue in the present case. Appellees' brief does suggest that 18 U.S.C. §§ 341-43 directly conflict with the Florida criminal statutes at issue. However, appellees admitted at oral argument that the pilots could comply with both the Florida criminal statutes and §§

---

[5] Younger v. Harris, 401 U.S. 37 (1971) ("absent extraordinary circumstances federal courts should not enjoin pending state criminal prosecutions" except where: (1) there is evidence of state proceedings motivated by bad faith; (2) irreparable injury would occur; or (3) there is no adequate alternative state forum where the constitutional issues can be raised); New Orleans Pub. Servs., Inc. v. Council of New Orleans, 491 U.S. 350 (1989) (irreparable injury under Younger is satisfied where federal preemption claims are "facially conclusive").

>341-43 without any problem. Moreover, the state statutes here, criminalizing the operation of commercial airlines while intoxicated, do not stand as an obstacle to the purpose of 18 U.S.C. §§ 341-43 or the federal regulatory scheme, and certainly not in a 'facially conclusive' manner....

Hughes, 377 F.3d at 1266 n.11.

As to field preemption, the Court noted that many federal statutes and regulations govern pilot qualifications and safety, but rejected the "inference that the entire field had been occupied, leaving no room for state supplementation." Hughes, 377 F.3d at 1271. Further, "there are indications in congressional statutes and in the FAA's regulations that it was contemplated that state statutes would operate affecting the precise conduct at issue in this case." Hughes, 377 F.3d at 1271. Therefore, the Court found field preemption was not "facially conclusive" under the Younger abstention doctrine. Hughes, 377 F.3d at 1271.

Finally, as to express preemption, the Court found that the Code of Federal Regulations' preemption provision[6] does not clearly addresses the Florida criminal statutes challenged in this case. The Court found it was not absolutely clear that the Florida statutes cover the same subject matter as 14 CFR Parts 65, 121, and 135, and noted it was at least arguable that the Florida statutes regulate conduct in a more indirect way than the federal regulations. Therefore, the Court found no "facially conclusive"

---

[6] "The issuance of 14 CFR parts 65, 121, and 135 by the FAA preempts any state or local law, rule, regulation, order, or standard covering the subject matter of 14 CFR parts 65, 121, and 135, including but not limited to, drug testing of aviation personnel performing safety-sensitive functions." 14 C.F.R. pt. 121, App. I, § XI(A).

4

express preemption under the Younger standard.

The United States Supreme Court denied certiorari. Hughes v. Crist, 543 U.S. 1051 (2005).

The State amended the information to eliminate all charges except operating an aircraft while intoxicated or in a careless or reckless manner. § 860.13(1)(a)-(b), (2), Fla. Stat.; [DE# 14, App. S, attachment I]. A jury found Hughes guilty. The court imposed a split sentence totaling five years; two and one-half years in prison followed by two and one-half years of supervised release. [DE# 14, Ex. S, attachment XI].

Hughes appealed his conviction and sentence to the Third District Court of Appeal. He alleged various trial errors and again challenged his conviction on federal preemption grounds. The Third District affirmed, finding Hughes was barred by res judicata from relitigating the preemption claim that the court denied in his pre-trial petition for writ of prohibition. Hughes v. State, 943 So. 2d 176, 185-87 (Fla. 3d DCA 2006). The court further found that, even if the claim was not barred, neither express, field, nor conflict preemption applied. Specifically, as to conflict preemption, the court rejected Hughes' position because "a pilot could comply with both the Florida law and the federal law and regulations, and criminalizing the operation of an aircraft while intoxicated does not stand as an obstacle to the federal regulatory scheme." Hughes, 943 So. 2d at 187 (citing Hughes, 377 F.3d at 1266 n.11).

The Third District found field preemption should not be inferred simply because the FAA's regulations are comprehensive. Moreover, it the federal regulations' reference to state investigations of drunk pilots to be persuasive. "By allowing the

5

investigation of a state law violation, it also clearly implies that such laws, once violated, may be prosecuted and are, therefore, not preempted." Hughes, 943 So. 2d at 187 (referring to 14 C.F.R. 91.17(c)).

The court rejected Hughes' argument that the Florida statute is expressly preempted by federal regulations, stating:

> [U]nlike [14 C.F.R. Parts 65, 121 and 135]..., section 860.13 does not impose certification or operating requirements upon airline employees. Rather, it regulates the *conduct* of persons operating aircrafts. There is no language in 14 C.F.R. § 121 App. I, § XI or any other federal source stating that state criminal statutes regulating the *conduct* of those operating aircrafts are preempted.

Hughes, 943 So. 2d at 186.

The court also found the Florida statute is not expressly preempted by the Federal Aviation Act, 49 U.S.C. § 41713(b). The court noted the FAA does not include any criminal penalties for crew members operating aircraft under the influence. While general criminal federal statutes address such conduct,[7] they are not part of the federal aviation legislation or statutory scheme dealing with the airline industry. Therefore, the court concluded, "if Congress intended for section 41713(b) of the United States Code to preempt state law regarding criminal conduct, it could have expressly stated so as it did in regard to other areas." Hughes, 943 So. 2d at 186.

---

[7] 18 U.S.C. §§ 341-343

6

The Florida Supreme Court denied review on June 4, 2007. Hughes v. State, 959 So. 2d 716 (Fla. 3d DCA 2007).

Hughes filed the instant petition on September 2, 2008. He argues his conviction for operating an aircraft under the influence of alcohol is preempted by federal law under express, field, and conflict preemption.[8]

### III. Timeliness, Exhaustion and Procedural Bar

The Respondent concedes this petition was timely filed and that all grounds have been exhausted and are not procedurally defaulted.[9] See 28 U.S.C. §§ 2244(d)(1)-(2), 2254(b), (c).

### IV. Standard of Review

Section 104(d) of the Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that a prisoner in state custody may not be granted a writ of habeas corpus for any claim that was adjudicated on the merits in state court unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an

---

[8] Hughes' supplemental memorandum in support of his petition duplicates, nearly verbatim, the habeas petition co-defendant Cloyd filed in this Court in case number 07-22339-Civ-SEITZ/ McALILEY. The magistrate issued Report and Recommendations in Cloyd's case on January 7, 2009, concluding that the Florida prosecution for operating an aircraft under the influence is not preempted by federal law. Cloyd filed objections to the magistrate's report. A final order has not yet issued.

[9] The Respondent does not argue the instant petition should be procedurally defaulted even though the State court applied a procedural bar to Hughes' federal preemption claim on direct appeal. This is likely because the case law on which that bar was based has been reversed. See Hughes, 943 So. 2d 176, 185 (finding res judicata based on Obanion v. State, 496 So. 2d 977, 980 (Fla. 3d DCA 1986); acknowledging later abrogation by Topps v. State, 865 So. 2d 1253, 1258 (Fla. 2004)). The Florida law supporting the procedural bar is therefore inadequate to warrant applying procedural default to this habeas proceeding. See generally Coleman v. Thompson, 501 U.S. 722 (1991) (independent and adequate state law grounds must support procedural default).

unreasonable determination of the facts in light of the evidence presented" to the State court. 28 U.S.C. § 2254(d)(1), (2); see Williams v. Taylor, 529 U.S. 362, 405-06 (2000); see also, Fugate v. Head, 261 F.3d 1206, 1215-16 (11th Cir. 2001).

A state court decision is "contrary to" or an "unreasonable application of" clearly established federal law if the state court applies a rule that contradicts United States Supreme Court precedent, or if the state court reaches a different result from the Supreme Court based on materially indistinguishable facts. Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 405-06. In the habeas context, clearly established federal law refers to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. Hall v. Head, 310 F.3d 683, 690 (11th Cir. 2002) (citing Williams, 529 U.S. at 412). However, in adjudicating a petitioner's claim, the state court does not need to cite Supreme Court decisions and the state court need not even be aware of the Supreme Court cases. See Early v. Packer, 537 U.S. 3, 8 (2002); Parker v. Sec'y, Dep't of Corr., 331 F.3d 764, 775-76 (11th Cir. 2003).

So long as neither the reasoning nor the result of the state court decision contradicts Supreme Court precedent, the state court's decision will not be disturbed.[10] Id. Further, a federal court must presume the correctness of the state court's factual

---

[10] The Eleventh Circuit has continued to stress the importance of the standard established in Section 2254(d), stating that the AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002). Specifically, the AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." Id. at 1295 (quoting Bell v. Cone, 535 U.S. 685 (2002)); see also Hawkins v. Alabama, 318 F.3d 1302 (11th Cir. 2003)(discussing AEDPA's limits on federal court authority).

findings unless the petitioner overcomes them by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).

## VI. Discussion

Hughes' habeas petition should be denied because the rejection of Hughes' preemption arguments is not contrary to or an unreasonable application of clearly established federal law.

Habeas relief should be denied because the Third District's conclusion that Hughes' prosecution was not preempted is not contrary to or an unreasonable application of clearly established federal law. The Third District correctly set forth Supreme Court cases addressing preemption. See Hughes v. State, 943 So. 2d at 185-86 (citing, inter alia, California v. ARC Am. Corp., 490 U.S. 93 (1989); Rice v. Santa Fe Elevator Corp., 331 U.S. 218 (1947); R.J. Reynolds Tobacco Co. v. Durham County, N.C., 479 U.S. 130 (1986)). The court applied federal law reasonably as set forth in the following discussion.

Conflict Preemption

Hughes argues the Florida statute[11] conflicts with federal

---

[11] The Florida criminal statute addressing operation of an aircraft while intoxicated or in a careless or reckless manner provides:

    (1) It shall be unlawful for any person:
    (a) To operate an aircraft in the air or on the ground or water
    while under the influence of:
    1. Alcoholic beverages;
    2. Any substance controlled under chapter 893;
    3. Any chemical substance set forth in s. 877.111; or
    (b) To operate an aircraft in the air or on the ground or water in
    a careless or reckless manner so as to endanger the life or
    property of another.
    (2) In any prosecution charging careless or reckless operation of
    aircraft in violation of this section, the court, in determining
    whether the operation was careless or reckless, shall consider the
    standards for safe operation of aircraft as prescribed by federal

criminal statute,[12] because the federal statute applies a higher criminal intoxication standard[13] than the federal civil standard[14] upon which the Florida prosecution relied.

Federal preemption may occur to the extent state and federal law actually conflict. "Such a conflict arises when compliance with both federal and state regulations is a physical impossibility,... or when a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress...." Wisconsin Pub. Intervenor v. Mortier, 501 U.S. 597, 604-05 (1991) (citations omitted).

The State court rejected Hughes' conflict preemption argument because "a pilot could comply with both the Florida law and the federal law and regulations, and criminalizing the operation of an

---

       statutes or regulations governing aeronautics.
       (3) Violation of this section shall constitute a felony in the
       third degree, punishable as provided in s. 775.082, s. 775.083, or
       s. 775.084.
       (4) It shall be the duty of any court in which there is a
       conviction for violation of this statute to report such conviction
       to the Civil Aeronautics Administration for its guidance and
       information with respect to the pilot's certificate.

§ 860.13, Fla. Stat.

[12] The federal statute addressing the operation of a common carrier under the influence of alcohol or drugs provides:

       Whoever operates or directs the operation of a common carrier
       while under the influence of alcohol or any controlled substance
       ... shall be imprisoned not more than fifteen years or fined under
       this title, or both.

18 U.S.C. § 342; see 18 U.S.C. § 341 (defining "common carrier" to include an air common carrier).

[13] Under the federal criminal statute, "an individual with a blood alcohol content of .10 percent or more shall be presumed to be under the influence of alcohol...." 18 U.S.C. § 343(1).

[14] The civil intoxication level is .04. See 14 C.F.R. §§ 91.17(a)(4); 121.458(d)(2) and 135.253(d)(2) (both renumbered as 120.37 by 74 Fed. Reg. 22649 on May 14, 2009).

aircraft while intoxicated does not stand as an obstacle to the federal regulatory scheme." Hughes, 943 So. 2d at 187.

The State court did not unreasonably apply federal law by reaching this conclusion because no conflict exists between the federal and Florida statutes. The Florida statute prohibits operation of an aircraft while intoxicated or in a reckless or careless manner. The statute does not contain a presumptive blood-alcohol level for intoxication. However, it requires consideration of the "federal standards for safe operation" of aircraft to determine whether the conduct was careless or reckless. The federal criminal statute prohibits operation of a common carrier while under the influence of alcohol or drugs. A person is presumptively under the influence for purposes of the federal statute if he has a blood alcohol content of .10 percent or more. However, the .10 limit is simply the amount above which intoxication is presumed, and is not a minimum required level for finding an individual is under the influence. See United States v. Prouse, 945 F.2d 1017 (8th Cir. 1991)(trial court did not err by rejecting a misleading jury instruction suggesting the .10 presumptive intoxication level was a minimum alcohol level that must be established to prove intoxication).

It is physically possible to comply with the state and federal laws because an individual between .10 and .04 percent alcohol could be considered intoxicated under either the state or federal statute. Accordingly, the Florida statute's contemplation of standards other than .10 does not conflict with the federal criminal statute. See Hughes, 377 F.3d at 1266 n.11(finding "the state statutes here, criminalizing the operation of commercial airlines while intoxicated, do not stand as an obstacle to the purpose of 18 U.S.C. §§ 341-343 or the federal regulatory

scheme...."). Moreover, the state and federal laws share the same purpose of imposing criminal liability on individuals who pilot aircraft while under the influence of alcohol. Based on the foregoing, the State court's rejection of the conflict preemption argument is not an unreasonable application of clearly established federal law.

Field Preemption

Hughes argues federal law completely occupies the field of aviation safety including the capacity and qualifications required to pilot commercial aircraft where there is no actual loss of life, injury or damage to property.[15] He argues there is no room for Florida's criminal statute because it is implicitly preempted by federal law.

> Federal preemption of an entire field may be implied if:
>
> a scheme of federal regulation is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," if "the Act of Congress ... touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or if the goals "sought to be obtained" and the "obligations imposed" reveal a purpose to preclude state authority. When considering pre-emption, "we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."

---

[15] 49 U.S.C. § 44701(a)(5); see 14 C.F.R. pts. 61, 67, 121, 135.

Mortier, 501 U.S. at 604-05 (quoting Rice, 331 U.S. at 230).

The Third District found field preemption should not be inferred simply because the FAA's regulations are comprehensive. The court also noted section 91.17(c) permits state officials to investigate violations of state intoxication laws that prohibit the same or similar conduct as federal regulations. The court took this language to "clearly impl[y] that such laws, once violated, may be prosecuted and are, therefore, not preempted." Hughes, 943 So. 2d at 187. This is not an unreasonable application of field preemption law.

The FAA was created to "provide for the regulation and promotion of civil aviation in such manner as to best foster its development and safety, and to provide for the safe and efficient use of the airspace by both civil and military aircraft, and for other purposes." PL 85-726 (Aug. 23, 1958) (72 Stat. 731). The FAA promotes safe flight by "prescribing ... regulations and minimum standards for other practices, methods, and procedure the Administrator finds necessary for safety in air commerce and national security." 49 USC § 44701(a)(5). In addition to the FAA, a separate federal statute[16] provides criminal sanctions for piloting a common carrier while under the influence of alcohol.

Although the aviation statutes and regulations are comprehensive, this does not necessarily mean preemption for the whole field can be implied. The presumption in favor of preserving the State's police power should instead dictate the outcome of this analysis. This construction is supported by indications that Congress did not intend to occupy the entire field of aviation-

---

[16] 18 U.S.C. §§ 341-343.

related activities. For instance, section 91.17(c)[17] permits state officials to investigate violations of state law governing "the same or substantially similar" conduct prohibited by section 91.17(a)(1), (2), or (4), that is, by acting as a civil aircraft crewmember after consuming alcohol or having a blood alcohol level of .04 or greater. Similarly, section 45106 provides that state regulation in the field which are inconsistent with the federal regulations are preempted, implying that consistent regulations are not preempted. These provisions indicate that there is room for state involvement in the field and that the entire field is not entirely occupied. See Hughes, 377 F.3d at 1269 (noting sections 91.17 and 45106 imply the field is not occupied; applying Younger

---

[17] The FAA general operating and flight rules dealing with alcohol or drugs states:

> (a) No person may act or attempt to act as a crewmember of a civil aircraft --
> (1) Within 8 hours after the consumption of any alcoholic beverage;
> (2) While under the influence of alcohol;
> (3) While using any drug that affects the person's faculties in any way contrary to safety; or
> (4) While having an alcohol concentration of 0.04 or greater in the blood or breath specimen. Alcohol concentration means grams of alcohol per deciliter of blood or grams of alcohol per 210 liters of breath.
> ...
> (c) A crewmember shall do the following:
> (1)On request of a law enforcement officer, submit to a test to indicate the alcohol concentration in the blood or breath, when –
> (i) The law enforcement officer is authorized under State or local law to conduct the test or to have the test conducted; and
> (ii) The law enforcement officer is requesting submission to the test to investigate a suspected violation of State or local law governing the same or substantially similar conduct prohibited by paragraph (a)(1), (a)(2), or (a)(4) of this section.
> (2) Whenever the FAA has a reasonable basis to believe that a person may have violated paragraph (a)(1), (a)(2), or (a)(4) of this section, on request of the FAA, that person must furnish to the FAA the results, or authorize any clinic, hospital, or doctor, or other person to release to the FAA, the results of each test taken within 4 hours after acting or attempting to act as a crewmember that indicates an alcohol concentration in the blood or breath specimen.

14 C.F.R. § 91.17.

"facially conclusive" standard).

Hughes contends sections 91.17 and 45106 authorize prosecution of intoxicated pilots of private aircraft but not intoxicated commercial pilots. The United States Supreme Court has never issued such a holding. Therefore, the Third District's finding that sections 91.17 and 45106 contemplate state criminal prosecutions is not contrary to or an unreasonable application of clearly established federal law.

Express Preemption

Hughes argues the Federal Aviation Act and related regulations expressly preempt his prosecution under Florida law.

The Supremacy Clause provides that state laws which "interfere with, or are contrary to the laws of congress, made in pursuance of the constitution" are invalid. U.S. Const. Art. VI, cl. 2. Congress can expressly preempt state law by setting forth its intent to do so in the terms of the statute. Mortier, 501 U.S. at 604-05.

Hughes argues section 45106[18] expressly preempts the State criminal statute because it prohibits State laws that are inconsistent with the regulations prescribed in chapter 451. Hughes

---

[18] The FAA's chapter on alcohol and controlled substance testing addresses the effect on state laws as follows:

> A State or local government may not prescribe, issue, or continue in effect a law, regulation, standard or order that is inconsistent with regulations prescribed under this chapter. However, a regulation prescribed under this chapter does not preempt a State criminal law that imposes sanctions for reckless conduct leading to loss of life, injury, or damage to property.

49 U.S.C. § 45106(a). Neither party asserts the clause which excepts State criminal laws which "impose[] sanctions for conduct leading to loss of life, injury, or damage to property," applies here.

15

also argues the State statute is expressly preempted by Appendix I[19] because the statute covers the same subject-matter as code sections 65.46,[20] 121.458,[21] and 135.253.[22]

The State court rejected Hughes' preemption argument because the Florida statute does not impose certification or operating requirements on airline employees. Rather, it regulates the *conduct* of persons operating aircrafts; no federal source says that state criminal statutes regulating the *conduct* of those operating aircrafts are preempted. This holding is not an unreasonable

---

[19] The Code of Federal Regulations' drug testing program requirements address preemption as follows:

> (a) The issuance of 14 CFR parts 65, 91, 121, and 135 by the FAA preempts any State or local law, rule, regulation, order, or standard covering the subject matter of 14 CFR parts 65, 91, 121, and 135, including but not limited to, drug testing of aviation personnel performing safety-sensitive functions.
>
> (b) The issuance of 14 CFR parts 65, 91, 121, and 135 does not preempt provisions of state criminal law that impose sanctions for reckless conduct of an individual that leads to actual loss of life, injury, or damage to property whether such provisions apply specifically to aviation employees or generally to the public.

14 C.F.R. pt. 121, App. I (renumbered as 14 C.F.R. § 120.121 on May 14, 2009).

[20] This section sets forth the use of prohibited drugs for air traffic controllers which is not applicable to this case and will not be discussed.

[21] Crewmember qualification section addressing misuse of alcohol:

> (b) Alcohol concentration. No covered employee shall report for duty or remain on duty requiring the performance of safety-sensitive functions while having an alcohol concentration of 0.04 or greater....
> (c) On-duty use. No covered employee shall use alcohol while performing safety-sensitive functions....
> (d) Pre-duty use. (1) No covered employee shall perform flight crewmember or flight attendant duties within 8 hours after using alcohol.... (2) No covered employee shall perform safety-sensitive duties other than those specified in paragraph (d)(1) of this section within 4 hours after using alcohol....

14 C.F.R. 121.458.

[22] Flight crewmember requirements section addressing misuse of alcohol; repeating the language contained in section 121.458, note 19, supra.

application of clearly established federal law because neither the FAA nor its regulations address criminal conduct or provide sanctions for such conduct.

The FAA and its regulations address alcohol use in the context of safety and a crewmember's qualification to fly. The preemption provision in question is located in FAA subpart III, entitled "SAFETY," which contains the alcohol and drug testing provisions. A recent rule amendment explained that "the FAA is charged with prescribing regulations for air carriers and foreign air carriers to establish and to conduct preemployment, reasonable suspicion, random, and post-accident drug and alcohol testing." 72 Fed. Reg. 22649 (May 14, 2009). The safety regulations require employers to carry out drug and alcohol testing under certain circumstances. Similarly, the purpose of Appendix I is "to establish a program designed to help prevent accidents and injuries resulting from the use of prohibited drugs by employees who perform safety-sensitive functions." 14 C.F.R. pt. 121, App. I(I)(A). Accordingly, sections 121.458 and 135.253 contain qualifications and requirements prohibiting a crewmember from performing safety-sensitive functions within 8 hours of using alcohol or with an alcohol content of .04 or greater.

Rather than regulating flight qualifications or safety measures, the State statute proscribes certain conduct and provides criminal sanctions. Accordingly, the preemption language in the federal statutes that prohibit states from regulating the same field would prohibit safety and qualification regulations, rather than criminal sanctions. The State court's finding there was no express preemption therefore is not contrary to or an unreasonable application of clearly established federal law.

IX. Conclusion

Based upon the foregoing, it is recommended that this petition for writ of habeas corpus be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

SIGNED this 20th day of August, 2009.

UNITED STATES MAGISTRATE JUDGE

cc:  Christopher Scott Hughes, Pro Se
     1406 Sequoia Cove
     Leander, TX 78641

     Rolando A. Soler, AAG
     Office of the Attorney General
     444 Brickell Ave., Suite 650
     Miami, FL 33131